Good morning, your honors and may it please the court. My name is Elizabeth Daly and I'm here representing Appellant Dat Do. With the court's permission, I'll endeavor to reserve five minutes of my time for rebuttal. Under this court's ruling in United States v. Rocha, the comprehensive federal assault statute occupies the field of assault on federal land and precludes the assimilation under the Assimilative Crimes Act of state crimes that punish approximately the same wrongful behavior. The district court here erred in allowing the assimilation of the state crime of unlawful use of a weapon, a crime that has virtually identical elements to federal assault, in that it punishes the infliction or threatened infliction of injury with a weapon. Based on Rocha's clear precedent, we'll ask this court to reverse on that threshold basis. Can I ask you just to jump way ahead? Assuming we were to agree with you on this point, is the remedy a reversal of the conviction itself? Yes, your honor. The reversal of the conviction and entry of an order of dismissal because I believe jeopardy has attached here and the government hasn't raised any other remedy. What about in the Supreme Court's decision in Lewis? That's the key Supreme Court case, if I'm remembering right? Yes, your honor. In that case, the district court had concluded that the error should result in the remedy of the defendant being convicted of second degree murder because the jury's finding necessarily satisfied the elements of the federal statute. Right, so that's what I'm asking. Why doesn't the same thing occur here? And one thing I noted in the Lewis opinion is the court said and Lewis has raised no objection to this. Here, I would certainly object to the entry of a conviction for any other crime because that hasn't been raised and litigated in the district court and it would depend, I think, on the elements of what crime were supposedly being contemplated. And so in this case, the grand jury indicted Mr. Doe only for unlawful use of a weapon. There was no other charge that proceeded to trial. And so I think you'd have a host of procedural problems with having a conviction on any other statute. It's possible that if this case were remanded, the government could ask for entry of a conviction on reckless endangerment, which was the lesser included offense that we requested at trial. And so that could be a potentially open issue for the district court on remand. But in this case, oh, go ahead. No, no, I'm sorry. Go ahead. Well, here, here, of course, the district court denied the request for the lesser included offense instruction, correct? Yes, Your Honor. The district court denied on the elements matching the government's, I think, primary response on appeal is a factual argument. They do somewhat defend the elements matching. We've addressed that based on this court's precedent under the residual clause, holding that statutes with basically identical elements can't be committed without creating a substantial risk of physical injury. And so that's the basis for our conclusion that the district court's elements matching conclusion was wrong. But if we were to agree with you on the threshold issue on the assimilation statute, it also seems to me that it would go back to the district court to sort all this out and not make a finding of jeopardy and other determinations on appeal. Do you agree with that? I think I agree with that. Your Honor, I'm not sure if the court has further questions on the Rosha issue, but I do just want to point out a few things on that. I don't want to spend my time unwisely, but the points that I wanted to make on there. The government, I think, is on board, is in agreement with the idea that unlawful use of a weapon involves assault of conduct, that they understand that the crimes are really closely associated to the point that it's a lesser included offense, to the point that state courts deem the convictions to merge. But I also want to point out that the state assault is not the comparison that we're making for purposes of the assimilation. The question isn't whether unlawful use of a weapon is similar to state assault. The question is whether unlawful use of a weapon is similar to federal assault. And the government hasn't raised any argument as to why it wouldn't be similar to federal assault. We cited the state criminal law committee's commentary that indicated that it expressly made that decision. It said, we want to make our state assault statute more narrow than federal assault. And that's why we're including some assault of conduct in other statutes, like the menacing statute, the harassment statute, and here are the unlawful use of a weapon statute. The other part of this analysis that I think is really significant from Rosha is the discussion of whether assimilation will effectively rewrite the federal statutory scheme. Because I think what we had here was a situation where Mr. Doe's conduct could have been punished under the simple assault statute. And it could potentially have been prosecuted under the more serious federal assault with a dangerous weapon. And in fact, that's what Mr. Doe was initially charged with. But by assimilating the unlawful use of a weapon state crime, what the court allowed the government to do was to bypass the mental state that would have been required for a conviction on that greater felony, the 10-year assault with a dangerous weapon. So because they assimilated the state crime, they were able to get a conviction on a 10-year felony based on the infliction or threatened infliction of injury with a weapon without having to prove the specific mental state element that Congress specifically chose. Isn't that just a way of saying that they were looking at a different crime, a crime that by the state's definition they didn't have to prove that intent, and that that was the gap in the assault statute that the state statute filled? The government's assertion is that the gap is a weapons gap, that a weapons control gap. And our position is there's no weapons control gap in the assault statute because assault with a weapon is expressly chosen. I think Rosha is the best case to address Your Honor's question. In Rosha, they made the same argument that because California assault had different elements from federal assault, specifically that it punished assault when it was only likely to cause great bodily injury versus have the federal requirement that you must cause bodily injury. The government had argued that the state crime addressed a gap, and Rosha said that that would essentially rewrite the very careful policy decisions that Congress had already made about the variations of assault. And here, where we have something that would sort of fit within the assault with a weapon and simple assault, we are adding a striation, a level, to the specific eight levels that Congress chose. So that's why we think the Rosha comparison is very apt here, and that assimilating this crime bypassed the penalty that the government could improve under federal law and tried to incorporate the same penalty by incorporating the state law crime. You know, I think you've answered this, but I just want to make sure I now understand this clearly. Because I could not figure out why the government created this problem for itself and why it didn't just charge your client under 113. And I gather what you're telling us is that it was able to get a 10-year statutory max if it used that state crime, but if it was only able to prove simple assault, it would have—what is it, like a one-year statutory max for that or a two-year? I believe it's one year. Okay, so is that—I mean, you're not in the government's head, of course, but does that seem to explain why we even have this kind of strange legal issue presented to us, is that they were trying to get a higher statutory max? It seems the best explanation from my perspective, because Mr. Doe was initially charged by complaint with the federal assault with a weapon with intent to cause injury. I don't think the facts of this case would have made it easy for the government to prove that Mr. Doe intended to cause injury, but that's how it was initially charged. And when the assimilation occurred, it essentially nixed out that element, and so it was easier for the government to prove its case. Got it. On the reckless endangerment, if I can just use a few minutes to address some of the non-threshold issues, of course, we think that the case should be resolved otherwise. We do think that it's an independent error for the district court to have failed to give the reckless endangerment. The district court only made the decision based on the matching of the elements, claiming that there was a way to commit unlawful use of a weapon without also committing reckless endangerment. The district court found a mismatch, and we've relied on this court's precedent to address that. But the government is raising now on appeal a different factual argument, and it's their perspective that there's no essential difference between using a weapon to threaten imminent serious physical injury versus using a weapon to warn someone away. And our response on that, I think, that we want the court to focus on is that this is a classic issue that should have been decided by the jury. And, of course, the government's entitled to its perspective as to whether they're the same thing or not, but the jury should have been the one to make that decision. The element that's here in dispute is the subjective mens rea required for unlawful use of a weapon, which is the intent to threaten imminent serious physical injury. And, of course, the jury could conclude that Mr. Doe's conduct was objectively threatening. They could conclude that the victims reasonably perceived that conduct to be threatening. But if the jury agreed with Mr. Doe's testimony that that was not his intent, then our position is that the jury would have been fully entitled to acquit on the facts of this case. And so I would like to reserve my time for rebuttal. I do think that the threshold issue should result in a reversal. And with that, I'll defer to the government. Thank you. May it please the court, Amy Potter on behalf of the United States. When faced with a defendant who not once but twice fired a gun into the air, and the defendant told us why. He told us it was to intimidate those other drivers. The government had two choices. One, charge a misdemeanor assault. Or, because it had to be in federal court, because the victims were Native American, charge the most appropriate state statute. And that is the statute that governs the use of a weapon. Because this wasn't an assault. It was the unlawful use of a weapon. And even though Rocha talks about the federal assault statute, we have to remember that that case dealt with two assault statutes. A federal assault statute and a state assault statute. What Lewis tells us about the federal assault statute is it's not as comprehensive as other federal laws. It's not as comprehensive as the murder statute. And Lewis even says, that's why perhaps we can't incorporate child murder in Lewis, but you might be able to incorporate child abuse. And we do incorporate child abuse. So while the defense portrays this as a government's attempt to avoid some burden of proof just to stick this defendant with a felony, what the government was trying to do is treat this defendant the same as any other defendant in the state of Oregon, and not allow him to escape the specific crime that Oregon has set up for this crime, simply because the victims here were Native American. Okay, so counsel, can I just ask you the question I posed to your opponent? So the reason why you did this and created this problem for yourself is because you wanted to hire statutory max? Absolutely. We wanted to charge the most readily provable offense. And that was the Oregon weapons offense. And the one that most clearly covers the conduct at issue, which is firing the weapon. Okay, well, I guess the problem I have with your argument, then, is that Congress has thought about this exact issue, because we have the separate crime for assault using a dangerous weapon. And so it just seems to me that in the relevant sense, Congress has occupied the field you now want to squeeze state law into. Because it's not as if there really is this gap where Congress just didn't think that, well, there might be this more serious kind of assault where somebody actually uses a dangerous weapon. Congress did think about that. And it just had this extra mens rea element that you couldn't meet here. And so I guess I don't see how you're in a position to say that we get to supplement the federal scheme with this state law offense that has a lower mens rea. My argument, Your Honor, is that when Congress devised the assault with a deadly weapon, they were focused on the physical attack, the actual attack on the person, the core of an assaultive statute. And what Oregon is punishing and what the government sought to punish is not the personal physical attack. It's the use of the weapon, specifically the unlawful use of a weapon to threaten. And, yes, there are different mens rea. And we acknowledge that. And we acknowledge that there is a reason we didn't proceed with assault with a deadly weapon. And that's because what the heart of the conduct here wasn't attempting to personally assault the passengers and driver of the vehicle. The core behavior was threatened with a weapon. And Congress hasn't occupied that field. So what do we do in that scenario? We turn to the state and we say, does the state manage that behavior? And they do with the unlawful use of a weapon. And that's why Oregon has the two different statutes. And I think that's based on that because you jump quickly to the Oregon statute. But Congress did think about this in that if there was an intent to harm, then, of course, there was this much more stepped up punishment. But both of these are involving assaultive behavior, both the Oregon statute and the federal statute. So once you cross that bridge, I'm not sure why you get to go back to Oregon just because you don't like the lesser punishment of a simple assault. That just doesn't make sense because you have both of these are assaultive conduct, aren't they? This prong of unlawful use of a weapon has at its core assaultive conduct. There are other prongs, and that's I think when you look at the Oregon statute, you can look at it and see that the core is the weapons. And I think the issue is, is just because they might both punish this, the question is whether the core behavior, whether the core act is something that Congress intended to occupy fully and it didn't with the federal assault statute. And I would say that this is more akin to the Sousa case where you have statutes that would cover breaking into that car. But the specific burglary of breaking and entering into the car was not covered by the trespass, by the theft, by all the other statutes the government could have charged. So in that case, the government was able to assimilate the Hawaii burglary statute. And so this is a similar thing. I acknowledge this could have been charged as a simple assault. I understand why you wouldn't do that. But one of your other arguments is, well, then let's go back and see what the Oregon legislature intended. And that's where I had some trouble with the argument because it seems to me, as you've said, that they were trying to target weapons use, not general assault. But why are we looking behind statutory language to Oregon's, the intent of the Oregon legislature, which may be difficult to define anyway? How does that figure in to our analysis, which is really looking to see what Congress intended? Absolutely, Your Honor. And to clarify, when we look, we look first at the federal assault statute and we say, does it occupy the complete field of all assaultive behavior? And I think Lewis directs us when it says the assault statute is not nearly as comprehensive as other federal statutes. So once we're there and we know that Congress has not done the most comprehensive statute, we look to see, does this federal assault statute, is it Congress's intent to encompass all types of assaultive behavior, regardless of what the state tells us? And I think the answer there is no. And that's how we're able to look. And then we take the turn and say, well, is there a state crime that better encompasses the behavior here, specifically the behavior of shooting the gun twice on the freeway? And there is. And there's no there's nothing that says to us that Congress absolutely intended to say we will not punish any of those crimes, just like Congress didn't say we're never going to prosecute child abuse with the assault statute. And that's how we start. So that we have to take the first step. I agree with you, Your Honor. You have to take that first step of looking at that federal statute. And what Lewis told us with respect to federal murder is that comprehensive statute, that occupies the entire field. But Lewis also tells us, and we look closely, the federal assault statute doesn't. So then we get to turn to state law. And what Rocha tells us, and I acknowledge, is we do not get to turn to Oregon's assault statute. There's no question about that. But when the state of Oregon has decided to punish weapons offenses, and Congress says it made no indication it intended to occupy the entire field of weapons offenses, we get to assimilate the Oregon state crime. And so that's how we ended up where we are. That's how we ended up in front of the jury on this issue. Before I turn to you, could you address the remedy question, if you have anything to add on that point? Your Honor, what I can say is, I also, we did not address this in the briefs, but in rereading Lewis, that is certainly what the Supreme Court did. I did not submit a 28-J. I can say generally, I found older cases in other circuits where that's clearly the remedy. You simply look to see what the corresponding federal law would be, and you convict the defendant of that. I did not find anything in the Ninth Circuit, and those cases were old. We did not advance that. I don't think this is a double jeopardy issue, though. I think we need to go back to the district court. If the court does not buy my arguments on the Assimilated Crimes Act, I think we go back to the district court, and we figure out what's left. And I think we have to take a really close look at what those remedies are. But I will acknowledge that isn't something we had raised. But what we did in Waits was just simply, the disposition line just simply says reversed. Like, the convictions are reversed. And I gather that that's what we would do here, and then you're saying you all would sort it out on remand, basically? I think that's right, and I think we need to look carefully at the line of cases, because even Waits is an older case. I know in that case there was a specific argument about a defense, so there was no finding by the district court that the jury's verdict necessarily meant, or the decision there necessarily meant guilt on the federal crime. I think we have a very strong argument that we have proven at least a simple assault here. But I think, yes, we are reversed. We go back to the district court, and we look back at that issue. But you're not arguing. You'd look at double jeopardy, obviously, and then you'd look at available crimes. Is that right? Yes, Your Honor, but I think we need to go back to the district court, because I don't think either of the parties has looked at that. And I'm not prepared to address it. It was something I finally figured out later in the Lewis game. So, yes. Was there another question? No. So turning to the lesser-included offense issue, I think the key here and what the district court did was correct. The district court looked at the specific elements of the statute, compared it with the specific elements of reckless endangerment, and found that they did not match, because the reckless endangerment requires the substantial risk of serious physical injury. And the jury did not specifically have to find that to find a lawful use of a weapon. I understand the argument with respect to Rendon Duarte, and certainly we all agree that the presence of a weapon increases the risk. That's why Oregon decided to specifically punish weapons offenses. However, this is a specific match-to-match element, and it didn't match. And so this is why there's no Oregon cases, except save the one, where this is treated as a lesser-included offense. What Oregon law tells us is the lesser-included offense is menacing, and that's not what was asked for here. But I also think that when you get to the core of the facts here, what the defendant admitted, there was no way for the jury to acquit him. When the jury found that that was a threat, when they found that when he said the whole purpose of me doing it, not once but twice, was to intimidate that driver, when they found that was a threat, there was no way they could acquit him of that and find him guilty of the reckless endangerment. Because he admitted all the core elements. And we can call it a warning, we can call it a threat, but the impact was clear. I'm going to shoot this gun. I want to go home. And if you don't let me, I have this gun. He doesn't have to say that. The Oregon Supreme Court has made that quite clear. Flicking open the knife, saying not a word, is a lawful use of a weapon. Because it conveys an unspoken threat. And that's what this defendant did. He shoots the gun once, we have the bottle throwing, he shoots the gun. Then they go up to pass. And even while the driver, his girlfriend, is trying to stop him, trying to roll up the window, he rolls it back down, he sticks that gun out, and he shoots it again. And he can say all he wants, that was a warning. But that was a threat. Because the gun carries with it the threat. The threat if you don't let me leave. The threat of what happens to the passengers and the driver in that car if they don't do what the defendant wants. And that's the core behavior. And he admitted that. So that's why we don't need to get to the lesser included offense and why it was not necessary. That's the core behavior. Why aren't you under the possibility of intent to harm of the federal statute to begin with? The core behavior is his intent to threaten, which is what the unlawful use of a weapon. The intent to threaten. Not to warn, but to threaten. And I think that is different than assault of conduct. It's the threatening with the weapon. Not threatening with words, threatening with the weapon. And that's how we get under the unlawful use of a weapon. Now there are a couple of other issues that haven't been addressed, and I want to make sure I hit the ones the court's most interested in with my limited remaining time. Are there questions on the other issues? You know, I have just a question more out of curiosity. At sentencing, once the defendant was convicted at sentencing, what sentence did you ask for? We asked for, I believe, Your Honor, I want to say, we asked definitely for a term of imprisonment, and it was not given. He had served approximately, I believe, 93 days in jail. But we did ask for a prison sentence. The exact amount. There is an Oregon guidelines issue, and we looked at the Oregon guidelines. I know there was a possible five-year sentence, though given his lack of criminal history, that wouldn't have applied in the state system. But I'm happy to check the record, or Ms. Daly may be able to answer that quickly as to the actual sentence we asked for. I was just more out of curiosity, because I was a little bit surprised that he ended up with probation. I didn't look into the sentencing, but why did the judge give him probation? I think the judge, you know, I don't want to speak for Judge Simon. I reviewed the sentencing briefly since that wasn't on issue. I believe there was some jail time. I think he looked at the lack of criminal history. I think Judge Simon did see the bottle throwing as a triggering event. I also know that Judge Simon, I think, saw it as one big incident as opposed to, you know, we saw it as two separate shooting incidents. I believe the judge found it more to be a continuous angry reaction to what had happened. So I think that all factored into Judge Simon's decision on the sentence. But again, I'm happy to look more closely at that and address it more fully at the court. The reason I was curious is that it, of course, calls into question your decision to go for the 10-year statutory max. This was all a waste of time, because you didn't get anything more than you would have if you just charged him with simple assault under 113. That's why I was just curious as to how this all played out for you. I think the core thing we got is he's no longer allowed to possess firearms, which is a critical component. He is not going to be legally possessing a firearm, so hopefully he will not be firing again when he gets angry because someone cuts him off. And I think that is a critical factor to go into why we make our charging decisions. Unless the court has further questions. I remembered to unmute myself. That's always a victory for me. Thank you, Your Honors. I don't want to get too far afield from the issues on appeal, but I do want to just address a few of the issues that Judge Watford raised, because I think, as you noted, it does go to the government's prosecutorial charging decisions, and I think it also goes to their theory about the lesser-included offense, that the jury could only have found the facts one way. This case was initially charged by complaint as assault with intent to cause bodily harm. It was later revised with an indictment that charged Mr. Doe with unlawful use of a weapon, two counts, as well as two counts of violating Section 924C with a mandatory minimum of 35 years imprisonment. It was only after dismissal of the 924C charges on legal grounds that we proceeded to trial solely on the unlawful use of a weapon charge. When Judge Simon gave probation, that was contrary to the government's requested term of imprisonment. I don't recall the precise request of the government, but my recollection is perhaps 18 months was what they had asked. I can't speak for Judge Simon, but from a defense perspective, the sentence was appropriate, given Mr. Doe's lack of any criminal record. The fact that he had been on pretrial supervision for quite some time at the time of trial with zero problems, and the fact that he had already gone to anger management classes to address the circumstances that led to this. But I think a critical factor was the extenuating circumstances based on the occupants of the Ford having taken the aggressive action of throwing a bottle at Mr. Doe's car in the dark on a two-lane highway when both cars were going at a high speed. And so although this case was framed as rogue rage, it was a response to an aggravating and dangerous precipitating factor that the occupants of the Ford then proceeded to lie about to the federal government for the next 16 months. With that, I want to address the Assimilated Crimes Act question of whether Congress has chosen to occupy the field of threatening someone with a weapon. The government claims there's a gap there. But we know from Llewellyn that assault is not only about the physical conduct. We know from Llewellyn that Congress made the choice to incorporate all of common law assault, which goes from the range of an offensive physical contact with a battery through both threats and inflicting injury. Oregon made different choices about that. But under federal law, when you talk about putting another person in fear of imminent injury, that is assault. Can you address Ms. Potter's argument that Lewis left a little daylight in there when it referenced the assault statute vis-à-vis the murder regime? Yes, I agree that not all assaultive conduct is going to be precluded by the federal assault statute. But let me make the distinction that we're talking about crimes like robbery, where assaultive conduct has the gist of trying to steal property. That would not be precluded by the federal assault statute because the gist of the offense is not the assaultive conduct, the infliction or threatened infliction of injury. It's the use of that conduct to steal property. So in Sousa, even though you had federal theft and you had federal trespass, the state crime was about the breaking and entering. And you didn't have any federal law that recognized the problem with breaking and entering, anything that went to that harm. But Rocha came after Lewis, and Rocha said, federal assault is comprehensive for assaultive conduct, and that's what we have with the state unlawful use of a weapon. Assaultive conduct with a weapon, threatening with a weapon, has already been thought about, and decisions were made by Congress that threatening with a weapon constitutes federal assault with a 10-year penalty only when there's an intent to cause bodily harm. They made that choice after thinking about this precise issue. And so we disagree with the government that there's any gap in federal law here. With that, we'll ask the court to reverse, and I agree with Ms. Potter that the remedy should be sorted out in the district court. Thank you. Thank you both for the very helpful arguments, also for the briefing on this very interesting case. The case of United States v. Dot Doe is submitted, and we'll next hear argument in Forstenson v. the U.S. Department of Labor.
judges: McKeown, Watford, Rothstein